J-A08043-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :       PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| JON C. CLARK | : |
| | : |
| Appellant | : No. 2005 EDA 2025 |

Appeal from the Judgment of Sentence Entered April 1, 2025
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000284-2024

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and KING, J.

MEMORANDUM BY PANELLA, P.J.E.:           **FILED JULY 1, 2026**

Jon C. Clark appeals from the judgment of sentence entered in the Court of Common Pleas of Monroe County for his conviction of theft by deception—false impression, 18 Pa.C.S.A. § 3922(a)(1). Clark argues that the evidence was insufficient because the Commonwealth only established that he merely did not fully perform his contract obligations, not that he acted with the intent to deceive. Because, viewing the evidence in the light most favorable to the Commonwealth, a reasonable juror could infer that Clark acted with the intent to deceive, we affirm.

We glean the following facts from our review of the certified record. Linda Young lived full time in her home in Wildwood, New Jersey. She owned a second home in Pocono Lake, Pennsylvania. In June 2023, she entered an agreement to sell the Pocono Lake home to Nicole Layng, with a closing date of July 13, 2023. Before closing, an inspection revealed necessary repairs.

Young and Layng agreed that Young would hire the contractor to make the repairs.

On July 1, 2023, Young reached out via text message to Clark, whom she had previously hired. Young told Clark that she needed the work done quickly because she was selling the house. Clark told Young that he could complete the tasks "no problem." On July 5, 2023, Clark agreed to perform eight tasks for a total price of $3,500. This consisted of three primary tasks: rewire the kitchen GFI and remove the existing mini split air conditioning unit and replace it with a new one ($1,500); install a radon mitigation system ($1,000); and install a new pressure tank ($750). Thereafter, Young sent Clark installment payments of $800 on July 5th, and $1,200 on July 10th. Additionally, upon Clark's request, on July 7th, and July 13th, Young sent Clark $500, and $750, respectively, for the purchase of a fan for the radon mitigation unit and a new air conditioning unit. These items were never installed.

During this time, Clark and Young exchanged text messages about his progress. Clark sent Young pictures that seemed to indicate he was making progress on each task. Based on these pictures and Clark's reassurances, Young sent Clark the requested money. Notably, as early as July 8th, Clark texted Young that he would have everything "wrapped up" the following day except for the air conditioning unit.

Layng moved in on July 18. When Layng moved in she found: for what was supposed to be the radon mitigation system, an unattached pipe hanging down with water dripping out, outlets with open wires sitting in the bathroom sink, the pressure tank was leaking, and the mini split system did not work. Layng had to hire a new contractor to fix these issues. The realtor, who was the only other person who appeared at the property during this period, testified that he barely ever saw Clark make any progress on any of the tasks and in the end it appeared as if nothing had been done. Clark would later admit that, although he told Young that the pressure tank was new, he merely cleaned off the old tank and that he kept the new mini split unit for which Young had paid. A few days after Layng moved in, Young repeatedly texted Clark demanding a refund for the inadequate performance. Clark never responded to Young's requests for a refund.

On August 24, 2023, Clark was charged with theft by deception—false impression, theft by unlawful taking (18 Pa.C.S.A. § 3922(a)), and receiving stolen property (18 Pa.C.S.A. § 3925(a)).

A one day jury trial commenced on January 28, 2025. Based on the above facts, Clark was found guilty of theft by deception—false impression. He was acquitted of all other charges. On April 1, 2025, the trial court sentenced Clark to 15 to 60 months incarceration, and granted him bail pending appeal. Clark filed a post-sentence motion for judgment of acquittal. On July 10, 2025, a hearing was held on the motion for judgment of acquittal.

The trial court denied the motion and explained why there was sufficient evidence to sustain the conviction. Clark timely appealed. Both Clark and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.[1] *See* Pa.R.A.P. 1925(a)-(b).

Clark raises one issue for our review. "Whether there was insufficient evidence at trial that [Clark] made representations to [Young] with the specific intent to defraud, given that [Clark] partially performed the contract for which he received payment?" Appellant's Brief, at 5.

Our standard for reviewing a sufficiency of the evidence claim is well-established.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the

---

[1] The trial court wrote a brief statement pursuant to Rule 1925(a) in which it referred to and incorporated its on record explanation for the reason the evidence was sufficient. *See* 1925(a) Statement, 8/21/25, at 2 (citing N.T., 7/10/25, at 2-3. 9-21, 26-27).

credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Dahl***, 296 A.3d 1242, 1250 (Pa. Super. 2023) (citation and brackets omitted).

Theft by deception—false impression, is defined as follows:

**(a) Offense defined.**—A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

(1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not substantially perform the promise.

. . . .

**(b) Exception.**—The term "deceive" does not, however, include falsity as to matters having no pecuniary significance, or puffing by statements unlikely to deceive ordinary persons in the group addressed.

18 Pa.C.S.A. § 3922(a)(1), (b). Accordingly, "the Commonwealth must demonstrate the presence of a false impression and that the victim relied on that impression." ***Commonwealth v. Thomas***, 684 A.2d 1085, 1086 (Pa. Super. 1996) (citation omitted). Of course, like any element of a crime, intent may be inferred through circumstantial evidence such as acts, conduct, or the attendant circumstances. ***See Commonwealth v. Biesecker***, 161 A.3d 321, 329 (Pa. Super. 2017).

Clark argues that the failure to fully complete the work that he promised to perform and "ghosting" Young are insufficient to prove that he intended to

defraud Young at the time that he entered the contract. *See* Appellant's Brief, at 11, 19-22. Further, he argues that his intent to perform is demonstrated by him partially completing the agreed upon tasks. *See id.* at 12-13. In support of his argument, he claims that the instant case is analogous to ***Commonwealth v. Bentley***, 448 A.2d 628, 631 (Pa. Super. 1982). ***See id.*** at 23-26. The Commonwealth argues that the evidence established his intent to defraud because Clark "maintained funds and property that he was not entitled to and lied to [] Young about the status of the job and what work had been completed or needed to be done." Appellee's Brief, at 27. We agree with the Commonwealth.

In ***Bentley***, Bentley contracted with the Landspergers to rebuild a porch and garage in exchange for $4,965. ***See Bentley***, 448 A.2d at 629. Over the course of about ten days, Bentley, with as many as four other men, tore down the old porch and garage. ***See id.*** at 630. By that point, he had received payment for 87% of the contract price but did not resume work, and the Landspergers could not get ahold of him. ***See id.*** He was charged and convicted of theft by deception. ***See id.*** at 629.

This Court reversed his conviction. We reasoned that there was no evidence of intent to deceive because he provided correct contact information and had "expended substantial resources in attempting to fulfill his side of the bargain." ***Id.*** at 632 (citation omitted). Further, it was undisputed that "unexpected problems arose in the course of the work[.]" ***Id.*** at 630.

Therefore, the only evidence of intent was his failure to perform, which was insufficient to sustain the conviction of theft by deception. ***See id.*** at 631-32.

We find the instant case to be more analogous to ***Commonwealth v. Donahue***, 2020 WL 7091280 (Pa. Super. filed Dec. 4, 2020) (unpublished memorandum).[2]

In ***Donahue***, Donahue contracted with a condominium association to provide new roofing on units. ***Donahue***, 2020 WL 7091280, at *1. The association gave Donahue an $8,000 check as a down payment for materials, which he cashed. ***See id.*** The job was only supposed to take six days, however, over about five months Donahue completed minimal work and failed to communicate with the association. ***See id.*** Donahue met with the association and represented that he would complete the work and then did not appear for one month. ***See id.*** Nearly six months later, the association had to hire a new contractor and criminal charges were filed. ***See id.*** We affirmed his judgment of sentence for theft by deception. ***See id.*** at *4. We reasoned that the evidence showed more than just mere nonperformance. ***See id.*** Rather, the record showed that Donahue cashed the check, and over a period of nearly six months, for a job that was supposed to take only six days, he performed minimal work and failed to communicate with the association. ***See id.*** Viewed in the light most favorable to the Commonwealth,

_____

[2] ***See*** Pa.R.A.P. 126(b) (non-precedential decisions filed after May 1, 2019, may be cited for persuasive value).

we concluded it could be inferred from that evidence that Donahue never intended to complete the job. *See id.*

The instant case is distinguishable from *Bentley* because there was other evidence of Clark's intent rather than just his failure to perform. Like *Donahue*, there was additional evidence, when viewed in the light most favorable to the Commonwealth, that supported the finding that Clark acted with the intent to deceive. The trial court explained this evidence in detail.

> Basically, this was not just a failure to perform. **It was a continued set of fraudulent representations or misrepresentations[,] articulated as promises and reassurances by [Clark,] that work was being done when it was not[,] that caused the former owner of the property to continue to pay [Clark] for work[,] again in increments[,] that was not performed and[,] significantly[,] for equipment that [Clark] kept**.
>
> . . . .
>
> But with respect to the pressure tank, the pressure tank was not new. There was a picture sent from [Clark] to the seller that depicted the pressure tank that was just cleaned, and the label was wiped off, and that's Page 55. There's a reference to the trial transcript there. [Clark] told the seller and the officer that it was in fact new. Again, Page 55, and also Page 169 and 106.
>
> [Young] testified—[Young] was the former owner of the property—that [Clark] sent a picture of the pressure tank. When he sent it, **he said it was new**. That is Page 106. [Clark] later testified that there was nothing wrong with the pressure tank, and so **he just merely cleaned it**. And that would be Pages 184 to 185. And [Clark] **charged the former owner/seller $750.00 to install a new pressure tank**.
>
> The radon reduction system. This was partially completed. [Clark] sent seller a photograph of the outside portion of the installation and told her the pipe in the basement was installed, and then all he needed to do was attach a fan to it. **It was later determined**

**that the pipe was not properly installed and that another company had to come in and actually install the pipe and complete the job**.

The former owner **relied on the promise that it was—that [Clark] was in the process of completing the radon reduction system, and based on [Clark's] request and representation or misrepresentation[,] sent additional money so that he could purchase the required fan**. Some notes of testimony references for that would be Pages 69 and 75.

Later, a radon company that came out to check on and finish the job saw the pipe wasn't installed []properly and was nonfunctioning, and by the time [Clark] left the job, **the fan was never installed even though he had been sent money to install it at his request and based on his representations**. And that's Page 163 would be one of the trial transcript references for that. With respect to the new air conditioner mini split unit, the air conditioner could not be fixed and so a new one had to be purchased. In fact, two different units were purchased. [Clark] first purchased a new air conditioner on his own credit card. However, he obtained the wrong unit and so therefore, had to return it for a refund.

While the refund was in process, he asked the seller to send additional money so he could buy the correct unit, and of course, the seller/former owner of the property did send the money.

As of the time of closing, it was determined the old air conditioner had been taken apart, and no new unit was installed in the home, and **[Clark] admitted on cross-examination the seller paid for the air-conditioning unit, and in the trial he still had it in his shed**. And some references for that, trial transcript references, would be Pages 191 to 192. So, again, another example **where additional money beyond the basic agreement was sent by the former owner to [Clark] based on representations or misrepresentations made by [Clark]**.

And then with respect to the outlets and wiring, the electrical wiring was hanging out of the wall of the kitchen and in the hallway.

So again, I indicated I wasn't going to go through every single item and every communication. I don't think that's necessary. I

think that what I've just summarized now is enough to show that this went far beyond the typical civil action of, or not action, a dispute between a contractor and homeowner, and **it [was] particularly marked by [Clark's] continued request for additional money for items that, one, weren't installed that he had and kept and/or two that worked—additional work or work that was being performed because there had been part of the—when some of the work had not been performed**.

So I guess using the standards and case law with respect to theft by deception and the statute itself, I think that when viewed in the light most favorable to the Commonwealth . . . there was certainly enough to show that [Clark] intentionally obtained property from another by deception, that there was the presence of more than one false impression and that the former owner/seller relied on the representations. And that the requisite intent was established by circumstantial evidence.

N.T., 7/10/25, at 15-19 (emphasis added).

We agree with the trial court's disposition. We further note that this was a project where time was of the essence. Despite this, Clark continued to misrepresent his progress to Young, which helped to reassure Young to continue to make installment payments or pay for materials. Further, Clark was sent money for a new fan for the radon reduction unit and a new air conditioner unit but he never installed these items. Clark told Young that the pressure tank he installed was new, however, at trial he conceded that he merely cleaned off the old pressure tank. When Layng took possession of the property, the tasks seemed to be closer to barely started, rather than nearly complete. As such, the evidence demonstrated more than mere nonperformance, and when viewed in the light most favorable to the

Commonwealth, it could be inferred from this evidence that Clark acted with an intent to deceive. Therefore, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/1/2026